**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

**MARIA POWELL,** on behalf of herself and all others similarly situated,

Plaintiff,

**-v-**

**PEAG LLC d/b/a JLab,**

Defendant.

---------------------------------------------------------------x

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

**DOCKET No.**

Plaintiff **MARIA POWELL**, ("Plaintiff" or "Ms. Powell,") individually and on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through her undersigned counsel, **Robert Schonfeld, Esq.** of JOSEPH & NORINSBERG, LLC, brings this action against Defendant, PEAG LLC, d/b/a JLAB ("JLAB" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*., arising from Defendant's failure to ensure that its ecommerce Website, www.jlab.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff, Maria Powell, is a resident of Bronx County and is permanently disabled due to legal blindness. Ms. Powell suffers from proliferative diabetic retinopathy, a severe and progressive retinal disease that has caused "severe and permanent damage to her vision." Her treating optometrist, Dr. Ralph Paternoster of Park Professional Eyecare in the Bronx, confirms that Ms. Powell "is legally blind due to proliferative diabetic retinopathy" and that "there are no available treatments capable of restoring her lost vision." Her condition "meets the criteria for legal blindness under both State and Federal standards & she should be afforded all privileges and accommodations

available to those who are legally blind." Exhibit A

2. Ms. Powell is a proficient user of screen-reading technology and keyboard navigation, which she relies on to access digital environments independently. Because she cannot visually perceive website content without accessible coding, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive controls, and screen-reader-compatible navigation in order to browse, evaluate, and purchase goods online. For blind consumers such as Ms. Powell, screen-reading software is not optional; it is the only means by which they can independently access the internet.

3. For Ms. Powell in particular, high-quality audio products are not a luxury—they are central to how she experiences, understands, and navigates the world. As a legally blind person, she relies heavily on her hearing for orientation, safety, communication, and enjoyment. Earbuds and headphones are essential tools that allow her to listen to screenreader output, navigation apps, audiobooks, podcasts, and calls in public and private spaces without disturbing others. They also allow her to maintain privacy when accessing sensitive information through speech output. Access to reliable, comfortable, and specialized audio devices is therefore uniquely important to her independence, dignity, and daily functioning.

4. According to the United States Census Bureau, millions of Americans live with significant visual impairments, including more than two million who are legally blind. In New York alone, hundreds of thousands of residents are blind or visually impaired. Congress enacted the Americans with Disabilities Act to eliminate discrimination against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. These protections extend to digital spaces. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web.

5. The internet has become an indispensable tool for modern life. It is a primary means

of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

6. Screen-reading software works by converting digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered.

7. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

8. Plaintiff brings this civil action against JLab for its failure to design, construct, maintain, and operate its highly interactive website, www.jlab.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its website—and therefore to the goods and services offered therein—constitutes a violation of Plaintiff's rights under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

9. On multiple occasions in 2026, Plaintiff attempted to access Defendant's website

using screenreader technology in order to research and purchase JLab's wireless and wired earbuds, including specific models marketed for sport, open-ear listening, and active noise cancellation. Plaintiff's shopping objectives were concrete, personal, and time-sensitive. She intended to review the product descriptions, features, usage information, pricing, and related purchase options for each item before completing a transaction.

10. Despite multiple attempts, Plaintiff was unable to independently complete her objectives due to persistent access barriers. Automated SortSite and WAVE audits of the exact pages Plaintiff attempted to access—including the "Shop JLab Wireless & Wired Earbuds" collection page, the "Epic Open Sport Air Conduction Wireless Earbuds – Black" product page, and the "JBuds Pods ANC True Wireless Earbuds" product page—revealed missing alternative text, missing and orphaned form labels, broken ARIA references, skipped heading levels, empty buttons, redundant links, and pervasive contrast errors. These barriers interfered with screenreader navigation and prevented Plaintiff from obtaining the same product information available to sighted users. Exhibit B

11. The accessibility barriers were pervasive across the pages Plaintiff attempted to use. For example, the WAVE report for the earbuds collection page identified "25 Errors," including "Missing alternative text," "Missing form label," "Multiple form labels," and "18 Broken ARIA reference," along with "10 Contrast Errors" and "60 Alerts." The WAVE report for the Epic Open Sport product page identified "27 Errors," including "6 Missing alternative text," "11 Missing form label," "2 Multiple form labels," and "8 Broken ARIA reference," as well as "17 Very low contrast" errors and "64 Alerts." The WAVE report for the JBuds Pods ANC product page identified "30 Errors," including "7 Missing alternative text," "11 Missing form label," "2 Multiple form labels," "Empty button," and "9 Broken ARIA reference," along with "16 Very low contrast" errors and "53 Alerts." These findings confirm that the Website is not coded in a manner compatible with

screenreader technology.

12. Defendant operates a retail ecommerce platform through which consumers can browse earbuds and headphones, review product-specific information, and purchase items directly online. Plaintiff specifically sought out Defendant because of its specialized audio products, including open-ear sport earbuds and true wireless earbuds with active noise cancellation, which are uniquely suited to the needs of blind users who rely heavily on hearing. As a legally blind consumer, Plaintiff relies on accessible digital interfaces and descriptive labeling to make informed purchasing decisions. Defendant's failure to provide an accessible website denied her equal access to the goods and services it provides to nondisabled customers.

13. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that www.jlab.com becomes and remains accessible to blind and visually impaired users. Plaintiff remains genuinely interested in purchasing the products offered by Defendant and intends to return to the website as soon as it is remediated so that she may independently browse and obtain information about products for herself and her family. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

**JURISDICTION & VENUE**

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.

15. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

16. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §

1391(b)(2) because Plaintiff resides in Bronx County which is within this District, and accessed Defendant's website from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where the plaintiff experiences the discriminatory denial of access to a website. See, *Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

17. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward New York consumers through its highly interactive ecommerce website, www.jlab.com, which allows users to browse inventory, review product information, create accounts, and complete purchases. Defendant ships products directly to New York residents and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business here. See Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); Reed v. 1-800-Flowers.com, Inc., 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

18. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online

19. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

20. Plaintiff Maria Powell is, and at all relevant times was, a resident of Bronx County,

New York. Ms. Powell is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by her treating optometrist, Ms. Powell suffers from advanced proliferative diabetic retinopathy, a permanent condition that severely restricts her visual acuity and visual fields and requires the use of screen-reading software to access digital content independently.

21. Plaintiff is a proficient user of screen-reader technology, including NVDA, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because she cannot visually interpret printed or digital information without assistive technology, Ms. Powell depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software.

22. For Ms. Powell, audio devices such as earbuds and headphones are essential assistive tools. She uses them to listen to screenreader output on her computer and smartphone, to follow GPS navigation while traveling, to participate in phone and video calls, to consume educational and entertainment content, and to manage daily tasks through voice-driven applications. High-quality, comfortable, and reliable earbuds are particularly important because they allow her to use her hearing intensively throughout the day without pain or fatigue, while still remaining aware of her surroundings. Open-ear and sport-oriented earbuds are especially valuable because they allow ambient sound to remain audible, which is critical for a blind person's safety and orientation in public spaces.

23. Upon information and belief, JLAB AUDIO, INC. d/b/a JLab is a corporation organized under the laws of a state other than New York, with its principal place of business located outside New York State. Defendant owns, operates, and controls the commercial website www.jlab.com, through which it markets, displays, and sells wireless and wired earbuds,

headphones, and related audio products to consumers throughout the United States, including residents of New York.

## STATEMENT OF FACTS

### Plaintiff's attempts to access the earbuds collection page

24. Between February 1, 2026, and April 20, 2026, Plaintiff Maria Powell attempted on three separate occasions to access Defendant's website www.jlab.com using the NVDA screen reader on her home computer in the Bronx. On February 1, 2026, Plaintiff navigated to the "Shop JLab Wireless & Wired Earbuds" collection page located at https://www.jlab.com/collections/earbuds. Plaintiff visited this page for the specific purpose of browsing JLab's full range of earbuds, comparing models, and identifying products that would meet her unique needs as a blind user who relies heavily on hearing.

25. Plaintiff sought to review the list of available earbuds, including product names, brief descriptions, prices, and key features such as open-ear design, active noise cancellation, battery life, and water resistance. She intended to use this information to narrow down her options before exploring individual product pages.

26. During this visit, Plaintiff encountered multiple barriers that prevented her from independently evaluating the earbuds collection. The WAVE report for the earbuds collection page identified "25 Errors," including "Missing alternative text," "2 Missing form label," "4 Multiple form labels," and "18 Broken ARIA reference," along with "10 Very low contrast" errors and "60 Alerts." These technical failures manifested in concrete ways for Plaintiff:

- Many product images and promotional graphics were announced only as "image" or "graphic" with no meaningful alternative text, depriving Plaintiff of information about product appearance, color options, and promotional content.

-  Filter controls for attributes such as “Age,” “Color,” “Fit,” “Connections,” “Power,” “Sound Features,” and “Other Features” were coded with ARIA attributes like aria-controls and aria-label, but WAVE flagged “Missing form label” and “Multiple form labels,” and “Broken ARIA reference” for these elements. As a result, NVDA announced these controls inconsistently or not at all, making it impossible for Plaintiff to understand how to filter the product list or what options were available.

-  The page contained “10 Contrast Errors” and “Very low contrast” text, which, while primarily affecting low-vision users, also indicated that the site’s visual design was not built with accessibility in mind and contributed to inconsistent focus indicators. WAVE reported that the page had an AIM score of “5.7 out of 10,” reflecting significant accessibility issues.

27. Because of these barriers, Plaintiff could not reliably navigate the product grid, understand how many products were available, or determine which earbuds might be suitable for her needs. NVDA would announce headings such as “VERSATILE EARBUDS FOR EVERY LIFESTYLE” and “130 products,” but the intervening product cards were often presented as a confusing sequence of unlabeled links, repeated “Learn More” links, and partially announced text. Plaintiff was unable to form a clear mental map of the page or to select specific products for further review.

**Plaintiff’s attempt to access the Epic Open Sport product page**

28. On March 5, 2026, Plaintiff returned to Defendant’s website to research the “Epic Open Sport Air Conduction Wireless Earbuds – Black” product page. Plaintiff was particularly interested in this product because it is marketed as an open-ear, air-conduction earbud designed for sport and outdoor use. For a blind user like Ms. Powell, open-ear earbuds are especially important: they allow her to listen to screenreader output, navigation instructions, and audio content while still hearing environmental sounds such as traffic, footsteps, and voices. This combination of audio immersion and situational awareness is critical for her safety and independence when traveling,

exercising, or navigating busy environments.

29. Plaintiff sought to review the product description, features, battery life, fit and comfort details, water resistance rating, controls, and pricing. She also wanted to confirm whether the earbuds supported multipoint Bluetooth connections and whether they were compatible with her existing devices.

30. During this visit, Plaintiff encountered pervasive accessibility barriers that prevented her from independently evaluating the Epic Open Sport product. The WAVE report for this page identified "27 Errors," including "6 Missing alternative text," "11 Missing form label," "2 Multiple form labels," and "8 Broken ARIA reference," as well as "17 Very low contrast" errors and "64 Alerts."

These technical issues translated into specific functional barriers:

Key product images and promotional graphics lacked alternative text. WAVE flagged "Missing alternative text," and NVDA announced these elements only as "image" or "graphic," providing no information about the product's design, how it sits on the ear, or what accessories are included. For a blind user, descriptive alt text is the only way to understand visual diagrams that explain fit and usage.

The "Color: Black" selector and other interactive controls were coded with ARIA attributes such as aria-current="page" and aria-label="Color Black, current", but WAVE simultaneously reported "Missing form label" and "Orphaned form label" issues elsewhere on the page. As a result, some controls were announced clearly while others were announced only as "button" or "link" without context, making it difficult for Plaintiff to understand how to change options or whether additional colors were available.

The "Add to Cart" button and shipping information were embedded in dynamic regions that WAVE flagged with ARIA and contrast issues. NVDA would sometimes announce "Updated Successfully" and "Get it via Standard Delivery Saturday, May 9 – Shipping to

34446 – Change," but these messages appeared repeatedly and out of context as Plaintiff navigated, causing confusion and making it difficult to locate the primary purchase controls.

The page contained multiple headings such as "MAKE YOUR SOUNDSCAPE EPIC," "EPIC OPEN SPORT QUICK LOOK," and feature blocks like "LAB QUALITY SOUND," "REST COMFORTABLY," "JLAB APP," "ACCURATE CONTROLS," "FAST PAIR," "BLUETOOTH MULTIPOINT," and "CLEAR CALLS." However, WAVE reported "3 Skipped heading level" issues and numerous ARIA role="presentation" elements, indicating that the heading structure was inconsistent. NVDA would jump unpredictably between sections, making it hard for Plaintiff to follow the logical flow of information.

31. Because of these barriers, Plaintiff was unable to determine critical information about the Epic Open Sport earbuds, including how they fit, how they are controlled, and whether they would safely support her need to remain aware of her surroundings while listening to audio. She could not confidently identify or activate the "Add to Cart" button, and she was unable to complete a purchase.

**Plaintiff's attempt to access the JBuds Pods ANC product page**

32. On April 20, 2026, Plaintiff made a third attempt to use Defendant's website, this time to research the "JBuds Pods ANC True Wireless Earbuds" product page. Plaintiff was interested in this product because it is marketed as a sleek-stem true wireless earbud with hybrid active noise cancellation, multiple microphones for calls, and long battery life. For Ms. Powell, a product like JBuds Pods ANC is important for situations where she needs clearer audio and reduced background noise—such as during phone calls, remote meetings, or when listening to screenreader output in noisy environments—while still being able to disable ANC or use "Be Aware" modes when situational awareness is necessary.

33. Plaintiff sought to review the product description, ANC features, microphone

configuration, battery life, water resistance, app support, and pricing. She also wanted to compare color options and understand the differences between ANC modes and spatial audio features.

34. The WAVE report for the JBuds Pods ANC product page identified “30 Errors,” including “7 Missing alternative text,” “11 Missing form label,” “2 Multiple form labels,” “Empty button,” and “9 Broken ARIA reference,” along with “16 Very low contrast” errors and “53 Alerts.” These issues created concrete barriers for Plaintiff:

- Product images and promotional graphics again lacked meaningful alternative text. WAVE flagged “Missing alternative text” and “A nearby image has the same alternative text,” indicating that some images were either unlabeled or redundantly labeled. NVDA announced these elements in ways that provided no useful information about the product’s design, fit, or included accessories.

- The color selector for “Color: Black,” “Color Mauve,” and “Color JLab Blue” used ARIA attributes such as aria-label="Color Black, current" and role="listitem", but WAVE simultaneously reported “Missing form label” and “Orphaned form label” issues. As a result, while some color options were announced, the overall control structure was confusing, and Plaintiff could not be sure whether she had successfully selected a color or whether additional options were available.

- The “ADD TO CART” button and associated purchase information were embedded in dynamic regions with ARIA role="status" and repeated “Get it via Standard Delivery Saturday, May 9 – Shipping to 34446 – Change” messages. WAVE flagged an “Empty button” and multiple ARIA issues, and NVDA would sometimes announce controls without clear labels, making it difficult for Plaintiff to identify the primary purchase action and to understand whether her actions had any effect.

- The “JBUDS PODS ANC: SLEEK-STEM DESIGN EARBUDS” and “JBUDS PODS ANC QUICK LOOK” sections contained multiple feature blocks—“MARATHON PLAYBACK,” “HYBRID ANC,” “LAB QUALITY SOUND,” “JLAB APP,” “LAB SPATIAL AUDIO,” “GOOGLE FAST PAIR,” “WATER RESISTANT,” “CLEAR CALLS,” and “STAY POWERED UP”—many of which were wrapped in elements marked role="presentation". WAVE reported ARIA presentation issues and heading-level problems, and NVDA did not consistently announce these features as a coherent list. Plaintiff was unable to obtain a clear, structured understanding of the product’s capabilities.

- The “REVIEWS” section contained interactive controls flagged by WAVE with aria-controls and tabindex issues, as well as “Orphaned form label” and “A nearby image has the same alternative text” alerts. NVDA’s focus would jump unpredictably

between review controls, share buttons, and rating summaries, making it difficult for Plaintiff to read reviews or understand overall customer feedback.

35. Because of these barriers, Plaintiff was unable to determine whether the JBuds Pods ANC earbuds would meet her needs for ANC, call quality, and long-term comfort. She could not reliably identify or activate the "ADD TO CART" button, could not confirm shipping and pricing details, and was again unable to complete a purchase.

**Systemic barriers confirmed by SortSite and WAVE**

36. The SortSite accessibility validation report for https://www.jlab.com confirmed that the barriers Plaintiff encountered were not isolated to a single page but were systemic across the Website. The report identified "16 issues on 33 pages" at Level A, including:

-  "A video plays longer than 5 seconds, without a way to pause it" (WCAG 2.1 A 2.2.2);

-  "An img without an alt attribute cannot have a role attribute" and "img elements must have an accessible name" (WCAG 2.1 A 1.1.1);

-  "Element li not allowed as child element in this context" and "Headings should not be empty" (WCAG 2.1 A 1.3.1);

-  "iframe and frame elements must have a title attribute" (WCAG 2.1 A 4.1.2); "Indicating links using only a text color change does not work for color-blind users" (WCAG 2.1 A 1.4.1);  "Link uses general text like 'Click Here' with no surrounding text explaining link purpose" and "Links must have an accessible name" (WCAG 2.1 A 2.4.4, 2.4.9, 4.1.2);

-  "The aria-owns attribute must point to IDs of elements in the same document" and numerous missing IDs for country-results and predictive-search-results across many pages (WCAG 2.1 A 1.3.1);

-  "The visual label must appear in the accessible name of links and controls" (WCAG 2.1 A 2.5.3);

-  "Use HTML headings instead of applying CSS heading styles to non-headings" and "Use semantic markup like strong instead of using the CSS font-weight property" (WCAG 2.1 A 1.3.1).

37. The report also identified Level AA issues on 33 pages, including insufficient color contrast (WCAG 2.1 AA 1.4.3), improper color settings on body and link elements (WCAG 2.1 AA F24), and focus outline problems (WCAG 2.1 AA F78). At Level AAA, the report flagged issues such as links opening in new windows without warning (WCAG 2.1 AAA F22), animations without user controls (WCAG 2.1 2.3.3), insufficient 7:1 contrast (WCAG 2.1 AAA 1.4.6), and repeated generic link text (WCAG 2.1 AAA F84, 2.4.9).

38. These findings corroborate Plaintiff's lived experience: Defendant's Website is not designed, constructed, maintained, or operated in a manner that is compatible with screenreader technology. The combination of missing alternative text, unlabeled and orphaned form controls, broken ARIA references, improper heading structure, contrast failures, and redundant or generic links prevents blind users from perceiving, navigating, and interacting with the Website on equal terms with sighted users.

39. Because JLab's products are specialized audio devices that are particularly important to blind users—who rely on hearing for navigation, communication, and access to digital content—the impact of these barriers on Plaintiff is especially severe. Defendant's inaccessible Website resulted in the loss of the opportunity for Plaintiff to purchase the specific products she sought at the time she sought them, and continues to deter her from attempting to use the Website until it is remediated.

40. Plaintiff remains highly interested in purchasing JLab' s earbuds and intends to return to the Website as soon as it is made accessible. Plaintiff's intent to return is concrete and credible because:

(a) she continues to require high-quality audio devices to support her daily life as a blind person;

(b) JLab's products, including open-ear sport earbuds and ANC true wireless earbuds, are uniquely marketed and not all are widely available in physical stores;

(c) she has no alternative means of independently evaluating or purchasing these specific products without an accessible Website; and

(d) she has demonstrated a history of attempting to access the Website for the purpose of making a purchase.

41. However, the persistent barriers she encountered deter her from attempting to use the Website again until it is remediated. Plaintiff's injury is ongoing because Defendant continues to operate an inaccessible Website without a policy or plan to ensure accessibility.

42. Defendant's failure to design, construct, maintain, and operate its Website in a manner compatible with screenreader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible Website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

44. All legally blind individuals in the United States who have attempted to access www.jlab.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

45. Plaintiff also seeks certification of a New York subclass consisting of:

All legally blind individuals residing in the State of New York who have attempted to access www.jlab.com and were denied equal access to the goods, services, and information offered thereon.

46. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its earbuds and audio products to consumers throughout the United States. Upon information and belief, thousands of blind and visually impaired individuals have attempted to access www.jlab.com and have been denied equal access due to the systemic accessibility barriers confirmed by SortSite and WAVE audits.

47. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;
- Whether Defendant's failure to make its Website accessible violates Title III of the ADA;
- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;
- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and
- Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

48. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screenreading software, and was denied equal access to Defendant's Website due to the same systemic accessibility barriers identified in the SortSite and WAVE reports.

49. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

50. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole.

Defendant continues to operate an inaccessible Website without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

51. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

52. Plaintiff, **MARIA POWELL**, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

53. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

54. Defendant's Website, www.jlab.com is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

55. Defendant has failed to design, construct, maintain, and operate its website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

56. Defendant's website contains numerous accessibility barriers—including missing alternative text, broken ARIA references, unlabeled buttons, inaccessible pop-ups, improper

heading structure, and aria-hidden focusable content—that prevent blind users from perceiving, navigating, and interacting with the website.

57. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

58. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

59. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.jlab.com has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant

has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

60. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**<u>SECOND CAUSE OF ACTION</u>**
**(New York State Human Rights Law)**
**("NYSHRL")**

61. Plaintiff, **MARIA POWELL,** on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

62. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

63. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

64. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.jlab.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

65. Plaintiff has visited the Website, www.jlab.com on a number of occasions and has encountered barriers to his access that exist.

66. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ...

disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

67. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

68. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

69. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law
§ 296(2)(c).

70. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

71. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

72. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

73. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

74. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

75. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered through the website.

76. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

77. Plaintiff, **MARIA POWELL,** on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

78. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

79. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

80. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

81. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

82. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.jlab.com is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

83. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

84. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

85. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id..*.

86. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**<u>FOURTH CAUSE OF ACTION</u>**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

87. Plaintiff, **MARIA POWELL.** on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

88. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

89. Defendant is subject to NYCHRL because it owns and operates the Website,

www.jlab.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

90. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

91. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

92. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

93. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

94. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations

and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

95. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

96. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

97. Plaintiff is also entitled to reasonable attorneys' fees and costs.

98. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

99. Plaintiff, **MARIA POWELL**, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

100. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

101. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq and the New York State and New York City anti-discrimination laws.
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.jlab.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
May 7, 2026

Respectfully submitted,
JOSEPH & NORINSBERG LLC
Attorneys for Plaintiff

By: /s/ Robert L. Schonfeld

ROBERT L. SCHONFELD, ESQ.
825 Third Avenue, Suite 2100
New York, New York 10022
(212) 227-5700
rschonfeld@employeejustice.com